59 C.C.P.A.(Patents)

## Application of MOON.

### No. 5875.

United States Court of Customs
and Patent Appeals.

March 27, 1952.

Harker H. Hittson, Columbus, Ohio, for appellant.

E. L. Reynolds, Washington, D. C. (Clarence W. Moore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, C. J., and JACKSON, O'CONNELL, JOHNSON and WORLEY, JJ.

JACKSON, Judge.

Appellant filed a patent application, serial No. 702,849, on October 11, 1946, for "Improvement in Cutting and Loading Machine." It purports to be a continuation of his application bearing the same title, serial No. 475,274, filed February 9, 1943.

The Primary Examiner finally rejected all of the claims of the continuing application 1, 12, 21, and 39, as unpatentable over the cited prior art. The decision of the examiner was affirmed by the Board of Appeals. From the decision of the board this appeal was taken.

We agree with the board that claims 1 and 12 are illustrative of the involved subject matter. They read as follows:

"1. A combination cutting and loading machine including a main frame, a pair of laterally spaced cutter bars on the forward end of said main frame permanently spaced apart and forming a conveyer trough of substantially uniform width between them, a plate interconnecting the central portions of said cutter bars and forming at least part of the bottom of said conveyer trough, and cutter and conveyer chain means on said cutter bars fanned out to cut a kerf of sufficient height to admit said cutter

bars and to cut a deep kerf in solid coal into which a substantial portion of said cutter bars can project and convey loose coal rearwardly along said trough, said cutter bars being at least in part pivotally mounted about a horizontal axis with their forward ends adapted to be adjacent the mine bottom and adjustable upwardly and downwardly and their rearward ends elevated to deliver material to a receiving device.

"12. In a combination kerf-cutting and loading machine, the combination with a main frame, of a pair of laterally spaced cutter and loader mechanisms each mounted on said main frame for adjustment together about a horizontal axis, means for adjusting said cutter mechanisms about said horizontal axis, each of said cutter and loader mechanisms including a cutter bar having a generally horizontal front portion rearwardly of which is an upwardly sloping portion, the rear portions of said cutter bars being connected as a unit to a transversely extending plate which forms a bottom plate of a conveyer trough between said cutter bars adjacent their rear ends, spacer means between said plate and the bottoms of said cutter bars, thereby spacing the cutter bars above said plate, said plate having its foremost edge rearwardly of the horizontal portions of said cutter bars whereby they have entirely free space between them at said front horizontal portions, and an endless bit carrying kerf-cutting and loading chain means on each cutter bar including fanned out bits constructed to cut a kerf of sufficient height to admit the horizontal front portions of said cutter bars and to cut a deep kerf in solid coal into which said horizontal front portions of said cutter bars may extend, some of said bits extending below the bottoms of said cutter bars."

The references relied upon by the examiner are:

| | | | |
|---|---|---|---|
| Joy | 1,489,600 | April 8, | 1924 |
| MacEachen | 1,585,041 | May 18, | 1926 |
| Morgan | 1,809,282 | June 9, | 1931 |
| Cartiledge | 2,090,395 | Aug. 17, | 1937 |
| Kraft | 2,113,733 | April 17, | 1938 |
| Levin | 2,303,372 | Dec. 1, | 1942 |
| Konnerth | 2,308,517 | Jan. 19, | 1943 |

The board, in its decision, considered the Levin, MacEachen, and Cartiledge references to be cumulative. We agree with the board in that respect and therefore we will consider the Kraft patent as the principal reference and the Joy, Konnerth, and Morgan patents as subsidiary references.

The involved application relates to a unitary mining machine designed to cut a deep kerf in solid coal; the breaking down of the coal which has been undercut by the kerf; and the carrying of the broken coal rearwardly to a mine car or other receptacle in a single operation without the use of explosives.

In the process of cutting coal in a mine with the apparatus of appellant, a bottom kerf, or cut, is made in the face of the solid coal by a series of bits projecting from endless cutter chains. The chains are each carried by a pair of laterally spaced cutter bars pivotally mounted about a horizontal axis on a main frame. The bars, which slope upwardly, are centrally connected by plates forming part of a conveyor of uniform width between them. The bits which cut the kerf act simultaneously to gather up the loose coal and convey it in a rearward direction along the conveyor to a hopper from which it is dumped into a car, truck, or the like, by a discharge conveyor, which includes a laterally swingable rear boom section. The main frame is mounted upon laterally spaced endless crawlers driven by a motor which is carried on the frame.

It should be noticed that the expression "fanned out," appearing in the claims, describes the shape of the bits that are on the cutter chains.

The Kraft patent discloses an apparatus for the gathering or loading of coal. It comprises a pair of laterally spaced sprocket chains supporting bars pivotally mounted on the front end of a main frame. Between the bars extends a plate on the lower side of the bars which forms with the bars a trough up through which the broken coal is swept by gathering arms on the chains. The arms comprise pick points but do not "fan out" as in the device of appellant.

The patent to Morgan relates to a mining and loading machine. It discloses a fanned out bit construction in the machine and also apparently a spacer plate between the cutter bar and supporting frame. That patent was cited by the examiner for the purpose of showing that it is not new to employ spacers providing clearance which is required to prevent the fanned out pick points from catching on the plate.

Both the Konnerth and Joy references disclose machines for cutting deep kerfs in solid coal. They are operated by means of endless chains traveling on supporting bars. There are pick points on the chains in fanned out formation so that a kerf is made which is wider than the thickness of the chain supporting bars to the end that the bars may enter deeply into the body of the coal without binding.

It may be observed that the device of the Kraft machine was not intended to cut a kerf in solid coal but mainly for use as a loading machine.

The tribunals below held that it would not involve invention in view of the Konnerth and Joy patents, to convert the Kraft machine, which is not a kerf cutter, into a device capable of cutting a kerf and loading out the coal.

It is contended by counsel for appellant that because of the fact that the machine of the Kraft patent is incapable of cutting a kerf in solid coal and that such a device so differs from a coal cutting structure that it should not be considered.

We cannot agree with such contention. In re Milne, 140 F.2d 1003, 31 C.C.P.A., Patents, 918; In re Goepfrich, 136 F.2d 918, 30 C.C.P.A., Patents, 1181. Several decisions were cited by counsel for appellant in support of his contention. However, those cases are not apposite here for the reason that there is no issue with respect to anticipation.

In our opinion it would not require invention to convert a coal gathering machine such as that of Kraft, in view of the subsidiary patents, into one capable of cutting a kerf in solid coal and also loading the coal out.

Seemingly, appellant had but one contention which has been hereinbefore disposed of. Therefore, for the reasons above set out, the decision of the Board of Appeals is affirmed.

Affirmed.