40 C.C.P.A. (Patents)

### Application of LILIENFELD.
### No. 5965.

United States Court of Customs
and Patent Appeals.
April 15, 1953.

Emery, Holcombe & Blair, Washington, D. C. (A. M. Holcombe and Joseph F. Brisebois, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (S. W. Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office (hereinafter referred to as the board) wherein the decision of the Primary Examiner (hereinafter referred to as the examiner) finally rejecting claims 23, 24 and 26 of the involved application of appellant, was affirmed as to claim 26, but reversed as to claims 23 and 24. The only claim before us on appeal, therefore, is claim 26. Eleven claims, including Nos. 23 and 24, stand allowed.

Claim 26 reads as follows:

"An anode structure for electrolytic condensers suitable for operation on an alternating current supply circuit and comprising a filmed metal anode, a thin porous separator thereover and a perforated electrode in contact with the separator, the perforated electrode being formed with a thin layer of non-passivating metal along its surface of contact with the separator and cooperating therewith to protect said filmed anode from disintegration by operation on such a circuit."

The involved application relates to an electrode for an electrolytic condenser. Counsel for appellant and counsel for the Government both state in their respective briefs that the statement of the invention in the decision of the board is acceptable for the purposes of this appeal. That statement, slightly paraphrased to avoid the use of designating numerals, reads as follows:

"The appealed claim relates to an electrode for an electrolytic condenser

designed for operation in an alternating current for power factor correction, wherein two identical electrodes [called anodes in the specification] are connected to power lines. Each of the electrodes is constructed of a film forming metal, such as aluminum. The dielectric film [layer] is surrounded by a spacer element which may be of paper, tissue, or a layer of porous aluminum phosphate. In connection with the spacer element there is added a perforated electrode with all its surfaces insulated except the surface in contact with the spacer element, which last surface is rendered non-film forming by spattering a thin layer of gold thereupon. The electrode is maintained at a positive potential with respect to the electrolytes of the condenser whereby it attracts negative OH ions which would normally concentrate about the dielectric layer on the electrode and increase the rate of deterioration of the dielectric layer."

The foregoing relates to subject matter shown in Figure 1 of the drawings and described in the specification.

The brief for appellant refers also to subject matter illustrated by Figure 2 of the drawings as follows:

"The description of Fig. 2 * * * shows that the metal of the electrode * * * [as recited in the above description of the matter in Fig. 1] is covered with a thin gold film * * on the face towards the separator [spacer] and elsewhere it is covered with an aluminum oxide film * * *, perforations being provided to permit access of the electrolyte to the separator and filmed face of the electrode in contact therewith in the assembled condenser. The appealed claim relates to this structure as an element of an electrolytic condenser."

■ As indicated in the beginning of this opinion, the board had three claims before it on the appeal from the examiner and the latter's rejection of claims numbered 23 and 24 was reversed. This eliminated

one of the references cited by the examiner as prior art. So, upon the claim numbered 26 the only claim before us, the prior art references are the following:

Slepian  1,473,883  Nov. 13, 1923
Claassen  2,220,887  Nov. 12, 1940

In the brief for appellant it is asserted that "further consideration of the Slepian patent seems uncalled for" and that "the only prior art requiring consideration is the Claassen patent." Apparently appellant takes this position because the board did not refer directly to the Slepian patent in sustaining the examiner's rejection of claim 26. However, the board did not overrule it as a reference and, in view of the fact that the examiner relied upon it, saying "This claim [26] is rejected on Claassen in view of Slepian," and the board explicitly affirmed the examiner's rejection as to that claim, we think that the Claassen patent is before us for consideration for whatever it may disclose. In re Boyce, 144 F.2d 896, 32 C.C.P.A., Patents, 718.

The argument on behalf of appellant seems to be based, in the first instance, upon a theory that claim 26 should be allowed inasmuch as claims 23 and 24 were allowed. It is not stated thus baldly in the brief, but we deduce such to be the theory from what the brief does say upon this phase of the controversy.

In the brief it is said in substance that claims 23 and 24 are the same as claim 26 in all essential particulars with the sole exception of the last clause of allowed claim 23 reading, "said perforated electrode being wholly insulated except for the surface thereof in contact with the porous separator." For that is substituted as the last clause of appealed claim 26: "the perforated electrode being formed with a thin layer of non-passivating metal along its surface of contact with the separator and cooperating therewith to protect said filmed anode from disintegration by operation on such a circuit."

The brief continues:

" 'Non-passivating metal' is non-film-forming metal, described in the speci-

fication as 'non-polarizable * * * such as gold' * * *. From this it appears that the 'non-passivating metal' of the appealed claim is a conductor of electricity not affected or made non-conducting when immersed in the electrolyte of a condenser operating in an electric circuit, as opposed to a 'polarizable' metal such as aluminum of which the electrode is made upon which an insulating film (or 'dielectric' film) of aluminum oxide is formed by the passage of an electric current through it when submerged in the electrolyte of an electrolytic condenser."

■ There is no provision of law which clothes this court with authority to pass upon the patentability of claims which are allowed by the tribunals of the Patent Office, and there is no rule of patent law more definitely and firmly fixed than the rule to the effect that this court will not allow a claim of an application simply upon the basis that other claims in such application have been allowed below. This is fundamental law which we think has been followed ever since the establishment of the present statutory procedure for carrying out the constitutional provision relating to the allowance of patents.

From appellant's own statement it is apparent that in claim 23 and its dependent claim 24, he now has the promise of full protection for everything in claim 26 except whatever may be in the last clause of claim 26 which is a claim for structure.

The structural element in the claim under consideration is defined by the phraseology reading, "the perforated electrode being formed with a thin layer of non-passivating metal along its surface of contact with the separator."

■ The remaining part of the clause reading "and cooperating therewith [that is, with the separator, or 'spacer' element] to protect said filmed anode from disintegration by operation on such a circuit" is a purely functional statement and cannot be relied upon to endow the claim with patentable subject matter. In re Laurent,

186 F.2d 741, 38 C.C.P.A., Patents, 811, citing General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402, where the Supreme Court said, as stated in headnote 3, "A patentee may not broaden his product claims by describing the product in terms of function." See also In re Shackell, 194 F.2d 720, 39 C.C.P.A., Patents, 847, for a recent application of this ancient rule of law.

■ So, our only concern here relates to the structural matter defined by the phraseology in the first portion of the concluding clause of claim 26, which, for convenience, we repeat:

"* * * the perforated electrode being formed with a thin layer of non-passivating metal along its surface of contact with the separator * *."

The "perforated electrode" so referred to is one added in connection with the spacer, or separator, element hereinbefore described. The specification states that it is preferably made so that all its surfaces are insulated except the designated surface already herein defined which preferably is covered "with a spattered layer of non-polarizable or non-passivating metal, such as gold."

With respect to claim 26 the board states ·

"* * * This claim defines substantially the same basic electrode arrangement as claim 24 except that there is no requirement that the second recited electrode be insulated but only that it be 'formed with a thin layer of non-passivating metal along its surface of contact with the generator.' So far as the operation of the Claassen condenser in the manner intended by the patentee is concerned, such an arrangement would be entirely feasible. While Claassen states that the anode * * * is provided with a dielectric film, there is no indication that the electrode * * * be treated in a similar manner. In fact, there is nothing to indicate that the Claassen condenser would not operate satisfactorily if its electrode * * * had non-film forming surfaces."

Preliminary to the foregoing, the board had said that "claim 26 has been rejected as being unpatentable over Claassen" and, as stated at the outset of this opinion, no direct reference was made by the board to the Slepian patent in connection with the rejection of claim 26.

Assuming for the nonce that the board may not have deemed consideration of the Slepian patent necessary, we are not convinced that rejection of claim 26 without such consideration was erroneous. It is obvious, as was stated by the examiner, that "the perforated electrode contacts the electrolyte both in appellant's and the Claassen structure." However, it is unnecessary to review the rejection in the light of Claassen alone because, as has been stated, the Slepian reference is involved before us.

In the specification of that patent it is said:

"The [Slepian] electrodes may be of various materials, but they are preferably of a material which is unaffected by the electrolyte in which they are immersed. For example, the electrode immersed in the acid electrolyte may be lead, graphite, magnetite, or an electrode of any suitable material coated with another material which is unaffected by the acid. The electrode immersed in the alkaline electrolyte may be graphite, magnetite, a noble metal, such as gold or an electrode coated with a substance which is unaffected by the alkali."

Thus, Slepian teaches the coating of non-filmed electrodes with a noble metal—gold —which is non-passivating, and we do not regard appellant's teaching of its use patentable over Claassen in view of Slepian.

The cases cited in the brief for appellant have been examined. No one of them presented a state of facts on all fours with the facts of the instant case.

The decision of the Board of Appeals as to claim 26 is affirmed.

Affirmed.