39 C.C.P.A. (Patents)

**Application of BERLINER.**

**Patent Appeal No. 5858.**

United States Court of Customs
and Patent Appeals.

April 8, 1952.

John P. Chandler, New York City, for appellant.

E. L. Reynolds, Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office. The board's decision affirmed the holding of the Primary Examiner rejecting as unpatentable over the prior art claims 1 to 6 inclusive, all the claims in appellant's application for a "Method of Welding."

The appealed claims relate to a method of welding a member of relatively thin, light-gauge metal to another metallic member of considerably greater mass or wall thickness. In particular, appellant discloses a method for welding a thin piece of tubing to the end of a heavy, thick-walled, cylindrical socket member having an axial bore extending therethrough, the resulting product being intended for use in high pressure Bourdon tube gauges. When an attempt is made to weld such members by heating in the area where they are to be joined, the heat is dissipated much more rapidly by the thick member than the thin member. If the thin member is considerably thinner than the thicker one, the heat required to retain the latter at welding temperature will burn up the thin member. To solve this problem, appellant uses an electric induction coil to heat the larger member adjacent the area of the joint to a temperature below the melting point of the members. The members are then fused together by heating the joint to melting temperature by means of a gas flame welding torch.

Claims 1 to 5 are substantially identical. Claim 3, which is considered representative of these claims, reads as follows: "3. The method of welding two metallic members, one having a relatively large mass, and the other having a relatively small mass, together, which consists in the steps of applying localized heating to the member having the larger mass in the general area of the weld portions by the use of a high-frequency induction coil, and thus raising the temperature thereof to a point below its melting point, then applying still more localized heating to the portions to be joined by the use of a welding torch, thus

raising the temperature to the melting point."

Claim 6, which differs slightly from claims 1 to 5, reads as follows: "6. The method of welding the terminal of a thin-walled metal tube to a thick-walled socket, which consists in heating the socket adjacent the area to be joined to a temperature below the melting point thereof by the use of a high-frequency induction coil, then applying the flame of a welding torch to the portions to be joined to raise the temperature thereof to the melting point."

The references relied on by the Patent Office are: Butcher 1,205,511 Nov. 21, 1916; Kidd 2,050,339 Aug. 11, 1936; Bates 2,276,643 Mar. 17, 1942; "Practical Manual of Autogenous Welding," p. 118; "Welding Handbook," 1942 Ed., pp. 1493–1494; "Welding Encyclopedia," 11th Ed., pp. 314 and 319.

Claims 1 to 5 were rejected as unpatentable over the disclosure in the "Practical Manual" in view of Butcher, Bates, the "Welding Handbook," or the "Welding Encyclopedia." Claim 6 was rejected as unpatentable over the references applied against claims 1 to 5 in view of Kidd.

The "Practical Manual" discusses the difficulty of welding two plates varying appreciably in thickness "since the blowpipe [i. e., gas torch] is too powerful for the thin piece or too weak for the thick piece." It then discloses that " * * * one can manage to join a thin plate to a thick plate by using two blowpipes, the one powerful, which raises to a red heat the thick plate, and the other of appropriate power for the thin plate, which weld together the two plates. * * *".

Bates discloses a method for welding pipe end to end in which the pipes are preheated adjacent the joint by means of induction coils, the joint then being electrically welded with a fusible electrode. Bates also points out that the use of induction coils wrapped around the pipe ends for preheating is particularly useful in the field when pipes are located in almost inaccessible places.

The "Welding Handbook" discusses preheating in connection with pipe welding and points out that preheating may be accomplished by several methods. It states, *inter alia,* that the simplest method is by torch heating which is limited to pipes having a sufficiently small diameter so that a uniform temperature is achieved around the circumference of the pipe; and that for larger pipe, or where supplementary heating is required, the preheating may be accomplished by several other means including electrical induction heating coils wrapped around the pipe ends.

The "Welding Encyclopedia" discusses, on page 314, a method of *brazing* a steel tube to a solid heavy hexagonal cap. The cap is heated by means of a single turn induction coil which surrounds it, and the tube is heated by conduction of heat from the cap.

Butcher discloses, in a tube-making machine, a method for welding the abutting edges of the tubing by electrically heating the edges to slightly below fusing temperature and then completing fusion of the heated edges by use of a gas torch. The electrical heating means used by Butcher, however, is not of the induction type. It is also pointed out in this reference that this welding method may be used to weld edges of metallic articles other than tubes.

Kidd discloses a thin-walled tube welded to a thick-walled socket.

In rejecting claims 1 to 5, the examiner pointed out that "red heat" is below the melting temperature, and held that the "Practical Manual" discloses a procedure for welding small and large members which is the same as appellant's method excepting for his substitution of electric induction heating for the large torch or blowpipe of the "Practical Manual." He was of the opinion that it was not inventive to substitute a modern electric induction heating coil for the large capacity torch of that reference in view of the teachings of the supplementary references. The examiner, in rejecting claim 6, held further that he did not deem it inventive to employ the method of claims 1 to 5 on thick and thin members which are in the form of a thick socket and a thin tube respectively, as shown in Kidd. The board agreed with

these holdings and accordingly sustained the rejections.

In addition to his basic contention, which is set out and discussed below, counsel for appellant raises, in his brief, several ancillary contentions based on certain features of appellant's method which are disclosed but not claimed. The board, in discussing these ancillary contentions, held them to be without merit because (1) they were not recited in the claims, and because (2) the board was also of the opinion that these features relied on by appellant were, for stated reasons, not inventive over the teachings of the art of record.

Assuming that the features relied on by appellant in his ancillary contentions are in fact inventive over the prior art—and we do not say they are—we think that these contentions are without merit since the right of an applicant to a patent depends not only on what his disclosure shows but also what he claims. The particular feature or fact upon which an applicant predicates patentability must not only be disclosed in the specification but also brought out in the claims. In re Richards, 187 F.2d 643, 38 C.C.P.A., Patents, 900, and cases cited therein. In view of this, we believe it unnecessary for us to consider these ancillary contentions in detail in this opinion.

Appellant's basic contention is that the method of the appealed claims is not fairly met by any of the references of record, or by any legitimate combination of these references. We think the process disclosed in the "Practical Manual" fully anticipates claims 1 to 5 except that the claims call for heating the larger member by use of an induction coil rather than a torch. The Bates patent and the "Welding Handbook" clearly disclose welding methods in which induction coils are used to preheat the ends of pipe sections adjacent the weld, and the "Welding Handbook" clearly teaches that such use of an induction coil is a recognized alternative to similar use of a gas torch. We are of the opinion that the substitution of an induction coil for the large torch in the process disclosed in the "Practical Manual" involves no more than a substitution of one recognized equivalent for another without the production of any new or unexpected result. The substitution of recognized equivalents doing the same thing by substantially the same means, without producing any new or unexpected result, is not such invention as will sustain a patent over the prior art. In re Stover, 146 F.2d 299, 32 C.C.P.A., Patents, 823. Accordingly, we are in agreement with the Patent Office tribunals that claims 1 to 5 are not patentable over the prior art. It is true, as contended by counsel for appellant, that preheating in the welding processes disclosed by Bates and the "Welding Handbook" is not precisely the same problem with which appellant is concerned. However, we concur with the board that the subject matter of these references is so closely analogous to the subject matter of appellant's application that this contention is without merit.

Appealed claim 6 is substantially the same as claims 1 to 5 except that the members of relatively small and large mass are specifically recited to be a "thin-walled metal tube" and a "thick-walled socket" respectively. As noted above, Kidd discloses a process in which a tube having a thin wall is welded to a socket having a thick wall. We agree with the holding of the Patent Office tribunals that it would not involve invention to employ the method of claims 1 to 5 to weld a thin tube and thick socket as shown in Kidd.

In view of the foregoing, we are of the opinion that the board did not err in holding the appealed claims unpatentable on the grounds of rejection discussed above. The decision of the Board of Appeals is therefore affirmed.

Affirmed.

JACKSON, J., sat during the argument in this case but retired April 1, 1952, before the opinion was fully prepared. He was recalled in conformity with section 294 (c) (d), Title 28, U.S.C., to participate in the decision and did so.