40 C.C.P.A.(Patents)
### Application of LOUMIET et LAVIGNE.
### Patent Appeal No. 5978.

United States Court of Customs and
Patent Appeals.
June 24, 1953.

Albert C. Nolte, New York City (Clarence M. Crews, New York City, of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (Clarence W. Moore, Washington, D. C., of counsel), for Commissioner of Patents.

Before O'CONNELL, JOHNSON, WORLEY, COLE and JACKSON (retired), Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner in finally rejecting claims 19, 20, 23, 24, and 25 of appellant's application, serial no. 594,031, for a patent on "Evaporating Apparatus". Appellant has withdrawn his appeal as to claims 23 and 24, so the only claims before us for consideration are claim 25 and dependent claims 19 and 20. All appealed claims are apparatus claims. Claims 7, 26 and 27, all apparatus claims, have been allowed.

Appealed claims 25, 19 and 20 read as follows:

"Claim 25. An unit of evaporating apparatus comprising an upper calandria of parallel non-horizontal tubes and a lower calandria of parallel tubes having at one of its extremities a liquid supply chamber in free and open communication with the inlet ends of the tubes of that calandria; at its other

extremity a closed chamber located between the calandrias, said chamber connecting the outlet ends of the tubes of the lower calandria directly and freely with the lower ends of the tubes of the upper calandria and unprovided with any opening other than the mouths of the adjoining calandria tubes; the lower calandria containing a less number of tubes than the upper.

"Claim 19. An unit of evaporating apparatus as described in claim 25 comprising means for injecting a vapor from an outside source into the liquid being treated at the inlet of every one of the tubes of the lower calandria designed as an emulsifier.

"Claim 20. An unit of evaporating apparatus as described in claim 25 comprising means for ejecting a vapor from an outside source into the liquid being treated at the inlet of every one of the tubes of the lower calandria designed as an emulsifier, wherein the outer surface of the connecting chamber disposed between the calandrias is a surface of revolution and both calandrias are coaxial with said surface and the tubes they contain extend vertically."

The references relied on are:

Kestner, 1,013,019, Dec. 26, 1911; Rusiecki, 1,021,486, Mar. 26, 1912; Lawrence, 1,524,184, Jan. 27, 1925; Fried (German), 543,105, Feb. 1, 1932.

The present application disclosed an improved evaporating apparatus composed of a series of evaporating units. The first unit comprises an emulsifier at the lower portion of the unit having an annular heater surrounding a central calandria which is provided with vertically extending tubes and a main calandria above the emulsifier, also provided with vertical tubes. The emulsifier and the main calandria are joined by a neck-shaped casting which directly connects the open ends of the tubes in the upper and lower calandrias. The solution to be evaporated is introduced into the annular heater and after circulating therethrough is delivered in a heated condition to a circular space below the lower calandria into which extends the lower open ends of the tubes of the lower calandria. Below the circular space is a chamber provided with a number of spouts which extend into the circular space, in alignment with the open ends of the tubes. A treating vapor is introduced into the chamber and passes through the circular space into the open ends of the tubes, emulsifying the solution to be evaporated. The treating vapor forces the solution to be evaporated against the walls of the tubes in a thin layer, while the vapor occupies the center of the tubes. The tubes of the calandrias are enclosed in a jacket provided with closure plates at both ends, through which the ends of the tubes extend. A heating medium, usually steam, is introduced into the jacket where it passes externally about the tubes. The latent heat of the steam is transferred through the tubes to the solution passing therethrough, causing a partial evaporation of the solution. In the lower calandria, this vapor, released by said partial evaporation joins with the treating vapor, futher emulsifying the solution. The emulsified solution is delivered through the closed chamber joining the two calandrias to the open ends of the tubes of the upper calandria. Here the same effect takes place as in the lower calandria, that is the liquid portion of the solution is forced against the walls of the tubes by the emulsifying vapor and absorbs the heat contained in the tube walls, thus causing a further evaporation of the solution. At the top of the upper calandria the liquid and vapor are separated, the concentrated liquid being led off to the intake of a succeeding unit at a lower pressure, thereby lowering the boiling point of said liquid, while the vapor is used as the heating medium for the calandrias of the succeeding unit. The same process is repeated at each succeeding unit, with the exception that no annular heater is necessary, since the liquid is delivered in a heated condition from the preceding unit. In the final unit of the series the concentrated liquid is drawn off and the vapor is delivered to a condenser. Applicant allegedly obtains a greater concentration of the liquid with greater efficiency by means of the emulsifying of the liquid in the lower calandria

and delivering the emulsified solution to the upper calandria for further evaporation. This type of evaporation is known as the *climbing film* type in the art.

Lawrence is the primary reference relied on in the rejection of the appealed claims. This reference discloses a double effect evaporator comprising an upper and a lower calandria, each calandria being provided with vertical tubes, apparently equal in number. The upper and lower calandrias are arranged in a single casing with a separating chamber disposed between the calandrias. Below each calandria is a liquid chamber directly connected to the inlet ends of the tubes of the calandria and supplied with liquid through a small pipe containing a restriction therein. In operation, liquid is fed into the liquid chamber of the lower calandria while a heating medium, such as steam, is introduced into the heating spaces about the tubes. The liquid rises in the tubes and is partially evaporated by the transfer of heat from the steam through the walls of the tubes to the liquid as the liquid passes through the tubes. This partial evaporation produces the "climbing film" effect through a portion of the tubes. At the top of the tubes the liquid and the vapor are separated in the separating chamber, the vapor being fed into the heating space about the tubes of the upper calandria while the concentrated liquid is carried through the small pipe into the liquid chamber of the upper calandria. The pressure of the liquid is lowered by the constriction in the pipe, thus effectively lowering the boiling point of the liquid so that the vapor which was released from the lower calandria can operate as a heating medium in the upper calandria and further evaporate the liquid in the upper calandria. The released vapor from the upper calandria is led off to a suitable condenser while the concentrated liquid is fed to a suitable reservoir. The patents to Rusiecki and Fried disclose evaporating systems in which the steam for evaporating is led through horizontal tubes while the tubes are immersed in the liquid to be evaporated or the liquid is dripped over the tubes. In both of these patents the patentee discloses a lesser number of tubes in the lower evaporator than in the upper. Appellant points out that this is necessary because the steam is introduced into the highest part of the evaporating system and as it descends through the system the volume of the steam is necessarily diminished due to condensation so that less area is required to contain the steam in the lower part of the system. The Kestner patent discloses the use of a special preliminary separating chamber in conjunction with an evaporator of the "climbing film" type in which a partial separator of vapor from the solution to be evaporated is effected, the solution being preheated before arriving at the chamber. This released vapor is taken from the preliminary separator to the lower end of the calandria where a series of small nozzles or jets forces the vapor into the open ends of the tubes of the calandria. The liquid is also led to the lower portion of the calandria by another route, which places the liquid above the nozzles or jets and the force of these jets causes the liquid to be pulled into the open ends of the tubes. This effectively produces emulsification of the liquid so that it is forced against the walls of the tubes in a thin layer.

Claim 25, the independent claim here on appeal, was rejected by the Patent Office tribunals as unpatentable over the patent to Lawrence in view of either of the patents to Rusiecki or Fried. The examiner in rejecting the claim on this combination of references stated that all the applicant had done was to eliminate the separator of Lawrence between the two calandrias along with its function. Applicant argued that such an alteration of the Lawrence reference would completely destroy the effectiveness of the upper calandria. The Board of Appeals apparently did not agree either with the examiner nor the applicant for, in rejecting claim 25 on the combination of references they said:

"In other words, in part at least, the suggested alteration of the Lawrence apparatus destroys its intended purpose and function. However, we are not convinced that the claim defines apparatus structure that patentably differentiates over Lawrence in view of

Fried or Rusiecki. That portion of the claim 'a closed chamber located between the calandrias, said chamber connecting the outlet ends of the tubes of the lower calandria directly and freely with the lower ends of the tubes of the upper calandria and unprovided with any opening other than the mouths of the adjoining calandria tubes' to which appellant, on page 13 of his brief, calls our attention as being a limitation which defines structure that does not correspond to that disclosed by Lawrence does not, in our opinion, define structure that is strikingly different from the Lawrence apparatus. * * *

"Furthermore, even assuming that there is a material structural distinction between appellant's chamber and that disclosed by Lawrence, the patentability of the claim cannot be predicated merely on an implication that the chamber is capable of accommodating the flow of liquid more freely and directly than that disclosed in the prior art. Nor are we impressed with the last clause of the above quoted portion of the claim. It does not define any definite structure. It merely limits, in a negative way, the number of intangible elements (openings) that may be present in the walls of the chamber connecting the two calandrias. Or, as the Court [The Court of Customs and Patent Appeals] has indicated under similar circumstances. In re Wharton, 70 U.S.P.Q. 228 [33 C.C.P.A. (Patents) 1198] 'it is merely a statement of something to be avoided'. The Examiner's rejection of the claim on the prior art will be sustained."

It is apparent that to be patentable claim 25 must set out sufficiently definite structure in the words "a closed chamber * * connecting * * * directly and freely" the tubes of the upper and lower calandrias and "unprovided with any opening other than the mouths of the adjoining calandria tubes" that is patentably distinct from the structure disclosed in the Lawrence patent. Lawrence does disclose a chamber, closed in the sense that the word is used by appellant, connecting the tubes of the upper and lower calandria but he also discloses an additional opening that leads from the chamber to the heating space of the upper calandria and the use of a constricted pipe to carry the liquid from the chamber to the tubes of the upper calandria. Therefore, we must determine whether the words "directly and freely" patentably distinguish over the constricted pipe, and whether the phrase "unprovided with any opening other than the mouths of the adjoining calandria tubes" sufficiently distinguishes from the opening to the heating space disclosed by Lawrence.

With reference to the words "directly and freely" the Board of Appeals considered this to be merely a matter of degree and therefore unpatentable, quoting Walker on Patents, 6th Ed., Vol. 1, Sec. 68: "It is not invention to change the size or degree of a thing, or of any feature or function of a machine of manufacture." Appellant agrees with the Board in part since he says in his brief:

"In Lawrence the communication between the tubes of the lower unit with the tubes of the upper unit is impeded by the diaphragm, the funnel, the cover, and the tube with its constriction. We admit that the diaphragm, the funnel and the cover are not intended to operate as pressure reducing obstructions, and do not do so in any marked degree, and we should be inclined to go along with the Board and say that the differences *so far as these elements are concerned* is merely an immaterial difference of degree." (Emphasis by appellant. Text slightly paraphrased to eliminate reference numerals and reference to patent specification by number and page.)

Then appellant argues that the constriction that reduces the pressure from the lower to the upper calandria is a difference of kind and not degree and therefore, the Lawrence patent does not anticipate the claimed subject matter.

 With this contention we are unable to agree. Insofar as any structural

314

limitation is set out positively in claim 25, such structure is found in the Lawrence patent, combined with the patent to either Rusiecki or Fried. The words "directly and freely" do not set out any structure but merely describe the function or use of the closed chamber. That patentability cannot be predicated on a functional or use limitation but must depend upon the recitation of structure that patentably distinguishes over the prior art is a well settled doctrine of Patent Law. In re Laurent, 186 F.2d 741, 38 C.C.P.A., Patents, 811; In re Lippold, 176 F.2d 932, 37 C.C.P.A., Patents, 713; In re Gardiner, 171 F.2d 313, 36 C.C.P.A., Patents, 748. The phrase "unprovided with any opening other than the mouths of the adjoining calandria tubes" cannot be considered to patentably distinguish over the combination of references since it is merely a statement of what is not included in the structure rather than positively pointing out the structure that is provided to obtain the desired results argued by appellant. We are of the opinion that the Board was correct in refusing to consider this phrase as defining structure that was patentably distinct from the reference. In re Wharton, 156 F.2d 180, 33 C.C.P.A., Patents, 1198.

Applicant also argues that it is incorrect to combine the Rusiecki or Fried patent with the Lawrence patent to meet the limitation of "the lower calandria containing a less number of tubes than the upper", since the use of the lesser number of tubes in the secondary references is for another purpose than that used by the applicant and that there would be no reason to so modify the apparatus of Lawrence. However, throughout applicant's specification no mention is made of the fact that a lesser number of tubes are required in the lower calandria than in the upper; in fact the point is not even mentioned in the specification. Therefore, even if the combination of references was invalid the limitation expressed is apparently not a critical part of the invention since no basis is found for this limitation in the specifications of appellant. Furthermore, we are of the opinion that the auxiliary references clearly disclose that there is no invention in providing the lower portion of an evaporator with a less number of tubes than the upper, if so desired.

The brief for appellant lays great stress upon various limitations of his invention that are not found in the prior art, such as the introduction of steam, or other heating medium into the heating space of both the upper and lower calandrias from a common source. However meritorious these limitations may be we are unable to find them expressed in any way in the claims here on appeal. It is well settled that limitations not expressed in the claims cannot be read into them to avoid the prior art. In re Erickson, 171 F.2d 307, 36 C.C.P.A., Patents, 734, and cases cited therein.

Claims 19 and 20 are rejected on the same references applied against claim 25 in view of the disclosure of Kestner. That Kestner discloses the use of means to inject a vapor into the liquid at the inlet of the tubes of the calandria cannot be denied. To use a comparable means in the device of Lawrence would not, in our opinion, involve invention. The term "outside source" cannot be considered to nullify the teaching of the Kestner patent. We do not see how such term distinguishes from the manner disclosed in the Kestner patent, and even if such term were considered to mean some source of steam or vapor other than the vapor previously separated from the solution, we are of the opinion that such an expediency would be obvious to one skilled in the art in view of the teaching of the Kestner patent.

Appellant's brief contains many arguments that relate to the scope of the invention disclosed in the specification of the patent application, apparently with the view of impressing on us the merits of his invention. In fact many points covered in the brief do not even appear in the original specification, such as the detailed explanation of the desirability of using a lesser number of tubes in the lower calandria. However, on an appeal to this court, we are not concerned with whether or not the application discloses

an invention. We are only concerned with the question of whether or not the appealed claims contain matter that is patentable over the prior art. In re Lamb, 146 F.2d 277, 32 C.C.P.A. 799. We have given careful consideration to all appellant's arguments that bear on the question before us on this appeal, but for the reasons hereinbefore stated we are of the opinion that the claims do not distinguish patentably over the references cited against them.

The decision appealed from is affirmed.

Affirmed.

JACKSON, J., retired, recalled to participate herein in place of GARRETT, C. J.